David Derrick (CA Bar No. 316745)
Catherine Kilduff (CA Bar No. 256331)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Phone: (510) 844-7100
Facsimile: (510) 844-7150
Email: dderrick@biologicaldiversity.org
       ckilduff@biologicaldiversity.org

Lindsey Zehel (*pro hac vice* forthcoming)
DEFEND THEM ALL FOUNDATION
25 NW 23rd Place, Suite 6-310
Portland, OR 97210
Phone: (567) 203-7220
Email: lzehel@defendthemall.org

*Attorneys for Plaintiffs Center for Biological Diversity and Defend Them All Foundation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and DEFEND THEM ALL FOUNDATION;<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL MARINE FISHERIES SERVICE and GINA RAIMONDO, Secretary of Commerce;<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1. Plaintiffs Center for Biological Diversity and Defend Them All Foundation ("Plaintiffs") bring this action under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1544, against Defendants Secretary of Commerce and National Marine Fisheries Service (collectively, "the Service") for failing to make the statutorily required 12-month finding on Plaintiffs' February 2022 petition to protect the tope shark (*Galeorhinum galeus*) under the ESA

Complaint                                                                                                                                      1

("Petition"). 16 U.S.C. § 1533(b)(3)(B). The Service's ongoing failure places this vulnerable shark, also known as the "soupfin" shark, at greater risk of extinction.

2. Tope sharks are small, highly migratory sharks that inhabit shallow temperate waters around the world. Within the United States, this shark can be found in waters off Washington, Oregon, and California, including San Francisco Bay.

3. Commercial fishing has precipitously depleted tope shark populations across the globe. These fisheries target tope shark for its fins, meat, and liver oil. Also, the shark is often incidentally entangled and drowned in gillnet fisheries. The International Union on the Conservation of Nature ("IUCN") listed the tope shark as critically endangered in 2020 because global populations have cratered by more than 80 percent in 79 years.

4. In response to Plaintiffs' Petition highlighting these threats, the Service concluded that listing the tope shark under the ESA "may be warranted." 87 Fed. Reg. 25,209 (Apr. 28, 2022). However, the Service has failed to follow up with the statutorily required 12-month finding. 16 U.S.C. § 1533(b)(3)(B). The 12-month finding on Plaintiffs' Petition was due on February 15, 2023, more than 16 months ago.

5. Yet the Service has not issued the required 12-month finding. Accordingly, Plaintiffs seek a declaration that the Service is in violation of its mandatory ESA obligation to make a 12-month finding on the Petition, and an order requiring the Service to issue a 12-month determination on the Petition by a date certain.

**JURISDICTION AND VENUE**

6. The Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 16 U.S.C. § 1540(c) because this action arises under the laws of the United States and the ESA's citizen-suit provision. An actual, justiciable controversy now exists between Plaintiffs and the Service, and the requested relief is proper under 28 U.S.C. §§ 2201 and 2202 (declaratory and injunctive relief), and 16 U.S.C. § 1540(g) (citizen suit provision of the ESA).

7. As required by the ESA, Plaintiffs provided the Service with notice of their intent to sue over the violations of law alleged in this Complaint more than sixty days ago. 16 U.S.C. § 1540(g)(2)(C). The Service has not remedied these violations of law.

Venue is proper in this district pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(b) because the violations are occurring in this district.

**INTRADISTRICT ASSIGNMENT**

9. Pursuant to Civil Local Rules 3-2(c) and 3-2(d), this action is properly assigned to the San Francisco, Oakland, San Jose or Eureka Divisions of this Court because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in counties in these Divisions.

**PARTIES**

**Plaintiffs**

10. Plaintiff the Center for Biological Diversity ("Center") is a nonprofit corporation that advocates for the protection of threatened and endangered species and their habitats through science, policy, and environmental law. The Center's Oceans Program focuses specifically on conserving marine ecosystems and seeks to ensure that imperiled species are properly protected from destructive practices in our oceans. In pursuit of this mission, the Center has been actively involved in securing ESA protections for imperiled marine animals and protecting sharks from entanglement with deadly fishing gear. The Center has more than 79,000 members, many of whom live along the Pacific Coast. The Center and its members are concerned with the conservation of imperiled species, including the tope shark, through effective implementation of the Endangered Species Act. The Center brings this action on behalf of itself and its members.

11. Center members live near and regularly visit ocean waters, bays, beaches, and other coastal areas to observe, photograph, study, and otherwise enjoy marine wildlife and their habitats, including tope sharks. Center members derive recreational, spiritual, professional, scientific, educational, and aesthetic benefit from the presence of tope sharks. The Center's members intend to continue to use and enjoy the habitat of tope sharks frequently and on an ongoing basis in the future.

12. Specific Center members have an interest in tope sharks and their Pacific Ocean habitat, including waters off California, Oregon, and Washington. Center members dive off California's coast to see near-shore marine life such as tope sharks. One Center member regularly freedives off the coast of California and looks for sea turtles, marine mammals, and

Complaint 3

sharks. He frequently sees tope sharks, and he plans to continue to look for tope sharks when diving.

13. Plaintiff Defend Them All ("DTA") is a nonprofit organization dedicated to securing a better future for animals and their habitats through community advocacy, education, and legal guidance. DTA maintains an ever-growing audience of legal scholars, attorneys, and professional advocates that rely on its research memoranda and commentary related to animal welfare law and policy. Additionally, DTA provides educational opportunities for law students to gain hands-on experiences with issues relating to environmental law and policy through various internship programs. DTA's Ocean Species Initiative highlights the need to secure protection for marine species and their habitats. In the summer of 2021, DTA student interns from the University of San Diego Law School, who live and recreate along the California coast where tope sharks are known to occur and have important breeding areas, recognized and championed DTA's work to protect tope sharks in support of its mission. DTA brings this action on behalf of itself, members, and supporters.

14. The above-described cultural, spiritual, aesthetic, recreational, scientific, educational, and other interests of Plaintiffs' members have been, are being, and, unless the relief prayed herein is granted, will continue to be adversely affected and irreparably injured by the Service's continued refusal to comply with its obligations under the ESA. The Service's failure to comply with the ESA's nondiscretionary deadline for a listing determination for the tope shark prevents the completion of the listing process and delays and deprives the shark of statutory protections necessary to the species' survival and recovery. The relief sought in this case will redress these injuries.

**Defendants**

15. Defendant Gina Raimondo is the Secretary of Commerce ("Secretary") and is sued in her official capacity. The Secretary is charged with implementing the ESA for most marine species, including the tope shark. The Secretary is the official in whom the ESA vests final responsibility for making decisions and promulgating regulations required by and in accordance with the ESA.

16. Defendant National Marine Fisheries Service, also known as NOAA Fisheries, is an agency within the U.S. Department of Commerce. The Secretary has delegated her authority to implement the ESA to the National Marine Fisheries Service, including the authority to implement the ESA for tope sharks. The National Marine Fisheries Service is required to comply with the ESA, including its mandatory listing deadlines.

## STATUTORY BACKGROUND

### Endangered Species Act

17. The ESA is the "most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its primary purposes are to provide a "means whereby the ecosystems upon which endangered species and threatened species depend may be conserved . . . [and] a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

18. To this end, section 4 of the ESA requires the Secretary to determine whether any species is "endangered" or "threatened." *Id*. § 1533(a). If so, the Secretary must list the species. *Id* §1533(c). The ESA defines a "species" to include "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id*. § 1532(16). An "endangered" species is "in danger of extinction throughout all or a significant portion of its range," and a "threatened" species is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id*. § 1532(6), (20).

19. The Secretary has delegated its administration of the ESA to the National Marine Fisheries Service.

20. The Service must list a species if it is endangered or threatened due to "(A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." *Id*. § 1533(a)(1). The Service must make listing determinations "solely on the basis of the best scientific and commercial data

Complaint                                                                                                                                        5

available . . . after conducting a review of the status of the species." *Id*. § 1533(b)(1)(A); *accord* 50 C.F.R. § 424.11(b).

21. The ESA has a suite of substantive legal protections that apply once a species is listed as endangered or threatened. For example, ESA section 4(a)(3) requires the Service to designate "critical habitat" for listed species, 16 U.S.C. § 1533(a)(3), to protect the habitat areas essential to the species' survival and recovery. *See id.* § 1532(5)(A).

22. In addition, ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' critical habitat. 16 U.S.C. § 1536(a)(2).

23. ESA section 9 prohibits, among other actions, "any person" from "taking" an endangered species without lawful authorization from the Service. *Id*. § 1538(a)(1); *see also id.* § 1532(19) (defining take). Other provisions require the Service to "develop and implement" recovery plans for listed species, *id*. § 1533(f); authorize the Service to acquire land for the protection of listed species, *id*. § 1534; and authorize the Service to make federal funds available to states to assist in the conservation of endangered and threatened species, *id*. § 1535(d).

24. The ESA further provides for "international cooperation" in the conservation of species found beyond U.S. boundaries. 16 U.S.C. § 1537. According to the Service, "the ESA can benefit the conservation of [foreign] species by increasing global awareness of the threats they face, promoting research efforts to address conservation needs, or encouraging funding for in situ conservation in the species' range countries." NOAA Fisheries, *Foreign Species*, www.fisheries.noaa.gov/national/endangered-species-conservation/foreign-species (last updated Oct. 12, 2022).

25. To ensure the timely protection of species that are at risk of extinction, Congress established a detailed and time-bound process in the ESA whereby the public may petition the Service to list a species as endangered or threatened and the Service must respond.

26. Specifically, "[t]o the maximum extent practicable, within 90 days" of receiving a listing petition, the Service must make an initial "finding as to whether the petition presents

Complaint                                                                                                                                         6

substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). The finding is referred to as a "90-day finding."

27. If the Service determines that listing may be warranted, it must conduct a full scientific review of the species' status, which is known as a "status review." *Id*.; 50 C.F.R. § 424.14(h)(2). Then, within 12 months of receiving the petition, the Service must make one of three findings: (1) listing is "warranted;" (2) listing is "not warranted;" or (3) listing is "warranted but . . . precluded" by other pending listing proposals, provided certain requirements are met. 16 U.S.C § 1533(b)(3)(B); 50 C.F.R. § 424.14(h)(2). The finding is referred to as a "12-month finding."

28. If the Service's 12-month finding concludes that listing is warranted and not precluded, the agency must "promptly publish" a proposed regulation to list the species as endangered or threatened in the Federal Register for public comment. 16 U.S.C. § 1533(b)(3)(B)(ii); *accord* 50 C.F.R. § 424.14(h)(2)(ii).

29. Within one year of publication of the proposed regulation, the ESA requires the Service to render its final determination on the proposal. 16 U.S.C. § 1533(b)(6)(A). This is known as a "final listing determination." At such time, the Service must either list the species, withdraw the proposed listing rule, or if there is substantial disagreement about scientific data, delay a final determination for up to six months to solicit additional scientific information. *Id*. § 1533(b)(6)(A)(i), (B).

## FACTUAL BACKGROUND

### Threats to the Survival of the Tope Shark

30. The tope shark grows up to six feet long and weighs up to 100 pounds. It is harmless to humans, as it preys on small fish between the middle of the water column and the ocean floor.

31. Tope sharks exist across the globe in shallow, temperate waters. Scientists recognize six genetically distinct populations of tope sharks off the coasts of the following regions: New Zealand to Australia; South Africa to Namibia; the northeast Atlantic including the Mediterranean; Brazil to Argentina; Ecuador to Chile; and Mexico to British Columbia.

Complaint 7

32. All six populations have been severely depleted. Studied populations show a depletion of 75–99 percent compared to pre-fishing numbers. Worldwide, the IUCN found the population of tope sharks has decreased more than 80 percent in just three generations (79 years). This led the IUCN to list the tope shark as critically endangered in 2020. Critically endangered is the IUCN's highest level of alarm before a species becomes extinct in the wild. The main threats to the tope shark are finning, which involves cutting the fins and discarding the rest of the shark; fishing the entire shark for oil or meat; and bycatch.

33. Tope sharks are slow to mature, taking twelve years to reach sexual maturity. Females only produce one litter every three years. These life history attributes result in a low reproductive rate, making the tope shark vulnerable to overfishing.



*Figure 1. Tope Shark. Photo: Rudie Kuiter / Aquatic Photographic*

34. Tope sharks are highly migratory. For example, sharks tagged in Britain have been found in Iceland and the Canary Islands. Females exhibit an unusual, triennial migration pattern, where they return to the same birthing site once every three years after migrating hundreds, or even thousands, of miles away.

35. Alternative common names for the tope shark exemplify the threats it faces: school shark, liver oil shark, and soupfin shark.

36. Unlike most sharks, the "school shark" swims in schools. This congregational behavior makes the tope shark a lucrative target for commercial fisheries compared to solitary sharks because fishermen can target an entire school rather than individuals.

37. It is known as the "liver oil shark" because it is pursued commercially for the oil in its liver, which contains squalene. Squalene is a product used extensively in the cosmetics industry for its high concentration of vitamin A. After less than a decade of exploitation for liver oil, the U.S. population of tope sharks collapsed in 1944. It remains low to this day. Despite this, entrepreneurs are considering using shark liver oil as a feedstock for biofuel, which could exert additional pressure on the tope shark.

38. It is called the "soupfin" shark because it is also killed for its fins, which people eat in the luxury dish, shark fin soup. Finning is the practice of catching sharks and slicing off their fins. The sharks, often still living, are then dumped back into the ocean. Sharks without fins cannot swim, and they sink to the bottom of the ocean and die. Fins fetch a higher price than shark meat, and cargo space on boats is limited, so fishermen choose to fill that space with valuable fins instead of less valuable shark meat. While finning is illegal in some nations, it is still widely practiced around the world. Over 73 million sharks are finned each year. The tope is a major target of shark finners.

39. Even where finning is banned, fishermen target tope sharks for their meat. Nations that outlaw finning typically allow fishing for shark if the entire shark is landed on shore. Consumption of shark meat is popular in many nations, such as Italy, Brazil, Spain, Uruguay, Thailand, and China.

40. Tope sharks are killed by fisheries even when they are not the target species. Tope sharks are often accidentally caught and killed, especially by gillnets. One study in Californian and Mexican waters found that 15 percent of radio-tracked tope sharks were killed in gillnets over a seven-year period. As a highly migratory species that transverses large swaths of ocean, these sharks face a heightened risk of encountering nets somewhere along their journeys.

41. Given these myriad threats to tope sharks—along with their slow reproduction—this shark is in urgent need of legal protection from the ESA.

**The Service's Failure to Publish a 12-Month Finding**

42. On February 15, 2022, Plaintiffs filed the Petition with the Service, which highlighted the tope shark's steep population decline due to overfishing (more than 80 percent over 79 years), the ongoing threat of fishing pressure, and the inadequacy of regulatory mechanisms to protect the tope shark from extinction. In response, the Service concluded that listing the tope shark under the ESA "may be warranted." 87 Fed. Reg. 25,209 (Apr. 28, 2022).

43. The Service's 12-month finding on Plaintiffs' Petition was due on February 15, 2023. A total of 28 months has passed since Plaintiffs filed the Petition, which is 16 months beyond the ESA's deadline.

44. The Service's failure to adhere to the ESA's required deadlines prevents the application of the ESA's substantive protections that are vitally important to the tope shark's survival and eventual recovery under the ESA. Until the Service acts and makes a 12-month finding and issues a final listing determination, the tope shark will continue to decline toward extinction.

**CLAIM FOR RELIEF**

**Violation of Section 4 of the ESA**

45. Plaintiffs re-allege and incorporate, as if fully set forth herein, each and every allegation in the preceding paragraphs of this Complaint.

46. The Service's protracted and ongoing failure to make the statutorily required 12-month finding on Plaintiffs' Petition to list the tope shark under the ESA violates the Act, 16 U.S.C. § 1533(b)(3)(B), and its implementing regulations, 50 C.F.R. § 424.14(h)(2).

47. Plaintiffs and their members are injured by the Service's continued failure to issue the required 12-month finding, and their injuries would be redressed if this Court grants Plaintiffs' requested relief.

**REQUEST FOR RELIEF**

For the reasons stated above, Plaintiffs respectfully request that this Court:

1. Declare that the Service has violated and is violating the ESA by failing to publish a 12-month finding for tope sharks, 16 U.S.C. § 1533(b)(3)(B);

2. Direct the Service to propose and finalize a 12-month finding for the tope shark by dates certain;

3. Award Plaintiffs the costs of this litigation, including reasonable attorney's fees; and

4. Provide such other relief as may be just and proper.

Respectfully submitted this 25 day of June,

/s/ *David Derrick*
David Derrick (CA Bar No. 316745)
Catherine W. Kilduff (CA Bar No. 256331)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Phone: (510) 844-7108
Facsimile: (510) 844-7150
Email: dderrick@biologicaldiversity.org
         ckilduff@biologicaldiversity.org

Lindsey Zehel (*pro hac vice* pending)
DEFEND THEM ALL FOUNDATION
25 NW 23rd Place, Suite 6-310
Portland, OR 97210
Phone: (567) 203-7220
Email: lzehel@defendthemall.org

*Attorneys for Plaintiffs Center for Biological Diversity and Defend Them All Foundation*